```
         IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF OHIO
                   EASTERN DIVISION
```

Julie N. Mount,                :

      Plaintiff,           :

    v.                         :     Case No.  2:14-cv-0846

                                  :     JUDGE ALGENON L. MARBLEY
Commissioner of Social Security,     Magistrate Judge Kemp

      Defendant.           :

                    REPORT AND RECOMMENDATION

                     I.   Introduction

    Plaintiff, Julie N. Mount, filed this action seeking review of a decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income.  Those applications were filed on July 21, 2011, and alleged that Plaintiff became disabled on September 1, 2008.  That date was later amended to July 21, 2011, and the Title II claim for disability insurance benefits was withdrawn.  A prior case involving a claim for benefits dating back to September 1, 2008, was resolved in the Commissioner's favor.  See Mount v. Comm'r of Social Security, Case No. 112-cv-943 (Watson, J.; King, M.J.).

    After initial administrative denials of her claim, Plaintiff was given a hearing before an Administrative Law Judge on March 15, 2013.  In a decision dated March 29, 2013, the ALJ denied benefits.  That became the Commissioner's final decision on May 30, 2014, when the Appeals Council denied review.

    After Plaintiff filed this case, the Commissioner filed the administrative record on September 22, 2014.  Plaintiff filed her statement of specific errors on November 20, 2014, to which the Commissioner responded on March 21, 2015.  Plaintiff filed a reply brief on April 4, 2015, and the case is now ready to

decide.

    II.  <u>The Lay Testimony at the Administrative Hearing</u>

Plaintiff, who was 25 years old at the time of the administrative hearing and who has a high school education (but who was in special education classes all through school) testified as follows. Her testimony appears at pages 32-54 of the administrative record.

Plaintiff first testified that she had done some work since her alleged onset date, working at Sam's Club for ten to twenty hours per week. She was demonstrating food products. She said that it was hard on her back and right leg. Those conditions caused her pain, but she was not taking medication at the time of the hearing because she was pregnant. She had not seen a doctor for her back or leg pain in several months and had not been seeing a mental health counselor since becoming pregnant.

While at home, Plaintiff spent time with her other children and took care of their needs. She did not believe she could work due to her learning disability, combined with her physical problems. She was unable to read or spell and had difficulty with simple arithmetic. Prolonged standing, walking, and sitting were all hard for her. She also testified to experiencing aggravation and crying spells

    III.  <u>The Medical Records</u>

The medical records in this case are found beginning on page 344 of the administrative record. The pertinent records - those relating to Plaintiff's statements of error - can be summarized as follows. For a summary of the medical records filed in connection with Plaintiff's previous unsuccessful claim for disability benefits, <u>see Mount v. Comm'r of Social Security</u>, 2013 WL 2897912, *2-5 (S.D. Ohio June 13, 2013), <u>adopted and affirmed</u> 2014 WL 6814979 (S.D. Ohio Dec. 3, 2014).

The first record is a form filled out by Dr. Sayegh, a

treating doctor, dated September 11, 2011.  He indicated diagnoses including lumbago and failed back syndrome, supported by trigger point tenderness and decreased sensation in the lower legs, said that Plaintiff had responded somewhat favorably to therapy, and that she could not do heavy labor but only "very light duty."  (Tr. 344-46).  He later completed a similar form on which he restricted her to "light duty with back restrictions."  (Tr. 404).  In June, 2012, he also assessed her psychological abilities, expressing the view that due to anxiety and depression she had a large number of marked impairments and would deteriorate under job stress.  (Tr. 425-27).  On the same day, he gave a more specific assessment of her physical capabilities, and included a number of work-preclusive findings, including the inability to sit, stand, or walk for more than five hours total in a work day and the need to miss five or more work days per month.  (Tr. 428-29).  The record also contains several years' worth of treatment notes from Dr. Sayegh showing diagnoses of lumbago, sprain/strain, sciatica, post laminectomy syndrome, L1 to L5 fixation, right hip pain, cervicalgia, radiculopathy, thoracic pain, ADHD, anxiety, depression, and sleep disturbance.

    The only other doctor to see Plaintiff for her physical conditions was Dr. Ogden.  In a letter dated August 29, 2012, he reported that Plaintiff was concerned about her neck and back.  She described daily severe back pain and intermittent right leg pain as well as pain in her neck, right trapezius, and shoulder plus some numbness in her right arm.  The MRIs which Dr. Ogden reviewed were essentially normal, as was her neurological examination.  Strength and reflexes were normal in her arms and legs.  Dr. Ogden concluded that the pain Plaintiff was experiencing did not come from her neck or back, and Plaintiff was going to talk to Dr. Sayegh about injections in the region of the piriformis to see if that helped with her leg pain.  (Tr.

450-55).

There are also a number of mental health treatment notes from Dr. Sharma. Most showed that Plaintiff had a depressed mood and restricted affect, but many also reported that she was doing well although she occasionally had nightmares and was fairly irritable at times. The diagnoses included ADHD inattentive type and a mood disorder. She was prescribed various medications for these conditions. None of the notes contain any functional restrictions.

The record also contains assessments made by state agency physicians. Dr. Torello thought Plaintiff could perform a limited range of light work. (Tr. 135-37). Dr. Rudy viewed Plaintiff as having a number of moderate mental restrictions but thought that Plaintiff could do simple repetitive work, and even some multistep tasks, in a setting without fast pace. (Tr. 137-39). Both of those findings were affirmed by subsequent reviewers.

### IV. The Vocational Testimony

Dr. Richard Oestreich was the vocational expert in this case. His testimony begins at page 54 of the administrative record.

Dr. Oestreich first testified that he did not believe Plaintiff had performed any substantial gainful activity in the past. He was then asked some questions about a hypothetical person of Plaintiff's age, education, and work experience who could work at the light exertional level but who could not climb ladders, ropes, or scaffolds, and who could perform other postural activities only occasionally. Also, the person was limited to simple, routine, and repetitive tasks, would be off task five percent of the day, and could work only in a low stress setting with only occasional changes and no assembly lines. Finally, the person could tolerate only occasional interaction

with others.  Dr. Oestreich said that such a person could do some unskilled jobs including assembler, car wash attendant, and sorter.  If the person also required four fifteen-minutes breaks, however, that person could not work, and the same would be true for someone missing three days of work every month or who was off task more than ten percent of the day.

V. <u>The Administrative Law Judge's Decision</u>

The Administrative Law Judge's decision appears at pages 13-23 of the administrative record.  The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff's physical condition had worsened and her mental condition had improved since the prior ALJ decision was made, and therefore the ALJ in this case would not adopt the residual functional capacity finding from that decision.  He then found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2009, and that Plaintiff had not engaged in substantial gainful activity since September 1, 2008.

Going to the second step of the sequential evaluation process, the ALJ determined that Plaintiff had severe impairments including post-laminectomy syndrome, status post lumbar fusion; lumbar radiculopathy; bipolar disorder NOS; ADHD; anxiety; and depression.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to step four of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform work at the light exertional level except that she could not climb ladders, ropes, or scaffolds, and could occasionally balance, stoop, kneel, crouch, and crawl.  She could also perform simple, routine, and repetitive tasks as long as she

was allowed to be off task five percent of the time; could work in a low stress job defined as only occasional changes in the work setting; could not do assembly line work; and could have only occasional interaction with co-workers, supervisors, and the public. The ALJ next concluded that, given this residual functional capacity, Plaintiff could do certain jobs identified by the vocational expert, including assembler, car wash attendant, and sorter. The ALJ further found that such jobs existed in significant numbers in the regional, State, and national economies. Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

VI. Plaintiff's Statement of Specific Errors

In her statement of specific errors, Plaintiff raises these issues: (1) the ALJ erroneously rejected the treating source opinion from Dr. Sayegh; and (2) the ALJ should have found, as the prior ALJ did, that Plaintiff's borderline intellectual functioning was a severe impairment. These claims are evaluated under the following standard.

Standard of Review. Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" Id. LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is

supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

### A.   The Treating Source Opinion

Plaintiff first argues that the ALJ did not provide good reasons for discounting Dr. Sayegh's opinion as to her physical capabilities.  She makes the same argument about his assessment of her mental capacity.  She is particularly critical of the ALJ's comments concerning the fact that Dr. Sayegh completed a "check the box" form, noting that the Social Security Administration uses and relies on similar forms, and she also asserts that the ALJ did not provide any other valid reasons for discounting both opinions.

The Court's analysis of this issue begins with the ALJ's decision itself.  Concerning Dr. Sayegh's opinions, the ALJ said:

> I give no weight to the opinion of Dr. Sayegh, the claimant's treating pain management specialist who submitted medical source statements with respect to the claimant's physical and mental functioning (Exhibits B4F, B7F & B8F). Dr. Sayegh submitted "check the box" medical source statements in which he opined that the claimant was limited to one hour each of standing and walking and three hours of sitting in an entire workday. Dr. Sayegh also limited the claimant's lifting to no more than ten pounds occasion [sic] despite the claimant's own admission that she routinely lifts her own three-year-old child who weighs much more than ten pounds (Exhibit B8F). Incredibly, Dr. Sayegh also opined that the claimant is markedly impaired in almost every area of mental functioning despite his lack of

-7-

>expertise in psychiatry (Exhibit B7F). Dr. Sayegh's opinion with respect to the claimant's physical functioning is contradicted by mild MRI findings, a generally normal physical examination by Dr. Ogden, a neurological surgeon, and the claimant's high functioning activities of daily living, which include childcare and work activity (Exhibits B1F, B2F, B4F, &B11F). Dr. Sayegh' s opinion about the claimant's mental functioning is contradicted by treatment notes from Dr. Sharma, the claimant's psychiatrist and her high functioning activities of daily living (Exhibits B6F &B9F). Disturbingly, it appears Dr. Sayegh relied quite heavily on claimant's subjective allegations and cavalierly filled out the claimant's disability paperwork as he even checked a box for "occasional" that failed to correspond to any limitation whatsoever (Exhibit 8BF, page 8). Dr. Sayegh's opinion deserves no weight.

(Tr. 21-22).

It has long been the law in social security disability cases that a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once. 20 C.F.R. §404.1527(c); see also Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981). However, in evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion. Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir. 1990). The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living. Cutlip v. Secretary of HHS, 25 F.3d 284 (6th Cir. 1994). No matter how the issue of the weight to be given to a treating physician's opinion is finally resolved, the ALJ is required to provide a reasoned explanation

so that both the claimant and a reviewing Court can determine why the opinion was rejected (if it was) and whether the ALJ considered only appropriate factors in making that decision. <u>Wilson v. Comm'r of Social Security</u>, 378 F.3d 541, 544 (6th Cir. 2004).

    The Court notes, first, that the ALJ did not actually discount Dr. Sayegh's opinions because they were made on a "check the box" form. That fact is noted in the administrative decision, but the format of the opinion is not cited as a reason to give it less weight.

    As to the reasons which the ALJ did provide, they include the lack of objective findings supporting an impairment of the severity described by Dr. Sayegh and the fact that Plaintiff's activities of daily living - both mental and physical - are much more extensive than what Dr. Sayegh said she could do. Although Plaintiff attacks the ALJ's articulation of these factors under <u>Wilson</u>, the Court finds them sufficient to permit judicial review. Thus, the question becomes whether they are substantial enough reasons to discount Dr. Sayegh's opinions.

    Taking the physical RFC first, it should be noted that the ALJ's decision on this point - that Plaintiff can do only light work with various limitations - was supported by the opinions of the two state agency reviewers. It is also a reduction in exertional capacity from the prior finding made by ALJ Eppler, who concluded that Plaintiff could do medium work. Plaintiff did not challenge that finding in the prior federal court case.

    Plaintiff testified to being able to take care of her small children on a daily basis, to doing some amount of household chores, and to an attempt at work which involved ten to twenty hours per week of light work activity. Those activities are, in fact, inconsistent with both the lifting restrictions imposed by Dr. Sayegh and the limitations he suggested on standing and walking. He did not cite to specific objective

tests which confirmed such severe restrictions, and the tests to which Dr. Ogden referred were all normal to the point where Dr. Ogden did not think that Plaintiff's back or neck were the cause of the pain she claimed to be experiencing.  It is apparent that Dr. Sayegh gave a substantial amount of credit to Plaintiff's report of symptoms, but the ALJ found Plaintiff not to be entirely credible, and she has not contested that finding.  While there are alternative interpretations of the record that might support a different conclusion, that is not the issue here.  It is well-settled that the Commissioner's decision, when supported by substantial evidence, must be affirmed even if the plaintiff's position is also supported by substantial evidence. See Smith v. Comm'r of Social Security, 482 F.3d 873, 876 (6th Cir. 2007). Here, the ALJ's reasons for discounting Dr. Sayegh's opinion that Plaintiff could not perform even sedentary work activity find substantial support in the record, and the Court may not substitute its judgment for that of the ALJ on this issue.

As far as mental restrictions are concerned, it is correct that Dr. Sayegh is not an expert in that area.  Further, as noted below, the ALJ, although he said that he was not bound by the prior determination about mental impairments, determined an RFC that is hard to distinguish from the RFC found in the prior case, which was affirmed on appeal to this Court.  Further, the notes from Dr. Sharma not only do not contain functional restrictions, but they paint a picture of someone who was functioning fairly well and who often missed appointments for treatment.  There is also, as the ALJ noted, no real evidence that Plaintiff was experiencing the kind of severe mental health symptoms described by Dr. Sayegh as she conducted her activities of daily living, or that she had any mental health issues with her work attempt, which, among other things, involved substantial interaction with the public.  Those factors, taken together with the opinions from the state agency reviewers, provide substantial support for the

ALJ's decision to give little weight to Dr. Sayegh's assessment of Plaintiff's mental functional restrictions. Consequently, the Court finds no merit in Plaintiff's first claim of error.

B.  <u>Borderline Intellectual Functioning</u>

Plaintiff makes a very straightforward argument on this point, noting that under applicable law, the current ALJ was bound by findings of the prior ALJ (who determined that borderline intellectual functioning was a severe impairment) unless the record on that issue changed. Because none of the new records address borderline functioning at all, Plaintiff contends that the ALJ had no basis for changing the decision about whether it was a severe impairment.

Plaintiff is likely correct. However, as the Commissioner argues, showing that an ALJ errs in not finding a particular impairment to be severe is not necessarily grounds for reversal. Such an error is harmless when any limitations which arise from that impairment are adequately reflected in the ALJ's residual functional capacity finding. As this Court has said, "where an ALJ errs in finding a particular impairment 'non-severe' in step two of the analysis, the error is harmless if the ALJ finds at least one severe impairment and continues to address each impairment in determining the claimant's RFC." <u>Underwood v. Colvin,</u> 2014 WL 347031, *9 (S.D. Ohio Jan. 30, 2014), <u>adopted and affirmed</u> 2014 WL 656642 (S.D. Ohio Feb. 19, 2014).

Here, the Commissioner asserts that the mental RFC findings made by ALJ Eppler, who found Plaintiff to suffer from borderline intellectual functioning, and ALJ Wang, the ALJ in this case, who did not, are virtually identical. The former finding included these limitations: "(5) able to perform simple tasks; (6) able to occasionally interact with others; (7) precluded from interacting with the general public; and (8) limited to low stress work (no strict production quotas or time pressures) and relatively static changes that can be easily explained with clear performance

expectations." See Mount, supra, at *6.  The finding in this case changes only one of these limitations slightly - ALJ Wang found that Plaintiff could occasionally interact with the general public - but that is not a limitation which is related to borderline intellectual functioning.  Plaintiff's reply does not identify any specific limitations which she contends were omitted; rather, she simply argues that "[t]he Commissioner's claim that the decision's RFC accounted for any limitation arising from [borderline intellectual functioning] is wholly inappropriate to the procedural posture of this case ...." Reply Memorandum Doc. 22, at 5.  The Court disagrees.  There is no reason not to apply a harmless error analysis here, and Plaintiff has not supplied one.  Under these circumstances, the Court finds no merit in Plaintiff's second claim of error.

## VII. Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be overruled and that judgment be entered in favor of the Defendant Commissioner of Social Security.

## VIII. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to

object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge