IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JULIE N. MOUNT, | : | |
| Plaintiff, | : | Case No. 2:14-CV-0846 |
| | : | JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | Magistrate Judge Kemp |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

## OPINION & ORDER

This matter is before the Court on Plaintiff's Objection, (Doc. 24), to the Magistrate Judge's July 7, 2015 **Report and Recommendation** (Doc. 23), recommending that the Court overrule Plaintiff's Statement of Errors, (Doc. 14), and enter judgment in favor of the Commissioner of Social Security ("Commissioner" or "Defendant").  Upon independent review by the Court, and for the reasons set forth below, Plaintiff's Objections are hereby **OVERRULED** and the Court **AFFIRMS and ADOPTS** the Magistrate Judge's **Report and Recommendation**.

### I. FACTUAL BACKGROUND

Plaintiff filed applications for disability insurance benefits and supplemental security income on July 21, 2011. A prior case involving a claim for benefits dating back to September 1, 2008, was resolved in the Commissioner's favor. *See Mount v. Comm'r of Soc. Sec.*, Case No. 112-CV-943 (Watson, J.; King, M.J.). In both 2011 applications, Plaintiff alleged disability beginning September 1, 2008 due to depression, anxiety, learning disability, back problems,

1

paranoia and ADHD. Plaintiff later amended the disability date to July 21, 2011 and withdrew the disability insurance benefits claim.

Plaintiff's current claim was denied initially on September 22, 2011 and upon reconsideration on January 9, 2012. An administrative hearing before an Administrative Law Judge ("ALJ") was held on March 15, 2013. (Record at 28). The ALJ issued a decision on March 29, 2013 concluding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 13). The Appeals Council denied Plaintiff's request for review on May 30, 2014 and adopted the ALJ's decision as the final decision of the Commissioner. (*Id*. at 1).

### A. Plaintiff's Medical Records

Dr. Sayegh, Plaintiff's treating pain management specialist, began treating Plaintiff on December 23, 2010. Dr. Sayegh's treatment notes from the initial consultation until February 2012 indicate a relatively unchanged diagnoses of lumbago, sciatica, sprain/strain, radiculopathy, L1 to L5 fixation, right hip pain, ADHD, anxiety, and depression. (R. 344-362; 402-415). The only noticeable change in treatment during this period was a slight alteration in Plaintiff's pain medication. A more noteworthy change in treatment is Dr. Sayegh's December 19, 2011 report noting that Plaintiff's reaction to therapy had been "mildly favorable" and permitting Plaintiff to undertake light duty with back restrictions, an improvement from Dr. Sayegh's September 11, 2011 report which prohibited labor of any kind and allowed only "very light duty". (R. at 404). Further, the three most recent treatment notes all include an almost identical description of Plaintiff's ailments:

> Physical examination of the neck, mid and lower back areas still shows trigger points and tenderness bilaterally and in the paraspinal muscles. Neurological examination of the upper extremities remains intact. Neurological examination of the lower extremities continues to show mild decreased sensation in the lateral aspect of the right lower leg. The right leg raising test is mildly positive.

2

>Examination of the right hip shows a mildly positive Patrick's sign. Examination of the right knee shows mild pain and tenderness with active and passive movement as well as flexion and extension. There is no edema or inflammation noted.

(R. at 410-415).

In June, 2012, Dr. Sayegh completed a physical capacity evaluation of Plaintiff upon Plaintiff's counsel's request in which he concluded that Plaintiff is limited to lifting up to ten pounds, standing, walking, and sitting for no more than five hours in an eight hour work day, as well as the need to have unscheduled absences five or more days per month. (R. 428-29). In the physical assessment he indicated that Plaintiff's condition is likely to deteriorate if placed under stress, but failed to provide an explanation for his conclusion, as required by the form. (R. at 429). On the same day, Dr. Sayegh completed a Mental Residual Functional Capacity ("MRFC") assessment in which he marked boxes indication Plaintiff had a number of moderate and marked mental limitations. When prompted to respond to the question of whether Plaintiff's marked impairments would deteriorate under job stress, he marked the box indicating that it would, and when asked to provide a reason why, he simple wrote: "Depressed Anxiety." (R. 425-27).

Plaintiff was seen by only one other physician, neurosurgeon Dr. Ogden, regarding her physical condition. In an August 29, 2012 letter Dr. Ogden reported back pain and right lower extremity pain and paresthesias, neck pain and right upper extremity and shoulder pain, benign cervical MRI, benign lumbar MRI without foraminal narrowing or central stenosis, and no degenerative disk disease. (R. at 451). Furthermore, Dr. Ogden reported a lack of recent physical therapy, normal strength and reflexes in both upper and lower extremities, and an overall "normal neurological exam." *Id*. Dr. Ogden concluded that Plaintiff's pain did not originate in her neck or back, and that Plaintiff would consult with Dr. Sayegh regarding injections in the region of the piriformis to alleviate her leg pain.

3

The record also reflects numerous mental health treatments notes from Dr. Sharma. Dr. Sharma's notes mainly show Plaintiff had a depressed mood, and complained of unusual stress, and nightmares. (R. at 430-435). In other notes, Plaintiff reported that she was doing well. *Id*. Dr. Sharma's diagnoses included ADHD and a mood disorder for which she was prescribed medications, but was not placed on any functional restrictions. *Id*.

Finally, the record includes the opinions of two State agency physicians who reviewed Plaintiff's medical records, and each of whom considered Plaintiff's educational, physical, and psychological history in their analysis. Dr. Rudy concluded that Plaintiff retained the capacity to carry out simple repetitive and some multistep tasks in a slow paced setting, to interact with others on an occasional and superficial basis, to adjust to occasional changes with some supervisory support, occasionally lift twenty pounds and frequently lift ten, and to stand or walk for approximately six hours in an eight hour workday. (R. at 135-38). Dr. Torello's conclusions were in accordance with those of Dr. Rudy. (R. at 147-150).

### B.  The ALJ's Decision

In its decision denying benefits, the ALJ conducted the required five-step sequential analysis for a disabilities benefits claim. *See* 20 C.F.R. § 404.1520.[1] The ALJ found, first, that

---

[1] The five sequential steps are as follows:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled....
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled....
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our

4

new and material evidence showed a worsening in Plaintiff's physical condition and an improvement in Plaintiff's mental condition since the prior ALJ's decision was made. (R. at 16). As a result, the ALJ in this case refused to adopt the residual functional capacity finding of the previous ALJ. *Id*. The ALJ also found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2009. *Id*. Then, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 1, 2008, the alleged onset date. *Id*. At step two, the ALJ determined that Plaintiff had the following severe impairments: post laminectomy syndrome; status post lumbar fusion; lumbar radiculopathy; bipolar disorder NOS; ADHD; anxiety; and depression. *Id*.

Despite these findings, at step three the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met the disability standards of the Social Security Act. (Doc. 11 at 17). Moreover, prior to step four[2], the ALJ concluded that Plaintiff had the following residual functional capacity:

---

listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled....
(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled....
(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled....

20 C.F.R. § 404.1520(a)(4).

[2] "Before we go from step three to step four, we assess your residual functional capacity.... We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps." 20 C.F.R. § 404.1520(a)(4); *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 28, n. 3 (6th Cir. 2009).

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: occasional climbing of ramps or stairs but no climbing ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching and crawling; simple, routine and repetitive tasks; allowed to be off task for 5 percent of the workday; work in a low stress job defined as only occasional changes in the work setting; no assembly line work; and occasional interaction with co-workers, supervisors, and the public.

(R. at 19).

With respect to Plaintiff's mental condition, the ALJ found no medical evidence in the record to support Plaintiff's allegations. The ALJ arrived at this conclusion by considering the mental status examinations and treatment notes of Dr. Sharma, the claimant's treating psychiatrist, and the claimant's daily activities, finding both to be inconsistent with Plaintiff's allegations. (R. at 20). In terms of medical evidence of record concerning Plaintiff's physical condition, the ALJ found physical examinations were inconsistent with Plaintiff's allegations of disabling pain, including Dr. Ogden's benign MRI findings, Dr. Sayegh's findings of generally mild medical signs, and evidence of routine and conservative treatment for pain after a successful lumbar fusion surgery in 2007. (*Id.*).

As for the opinion evidence, the ALJ gave great weight to the opinions of the state agency medical and psychological consultants because their opinions were "well supported by mild MRI findings, mild to moderate physical examination findings, the claimant's lack of physical therapy or need for additional surgery, and the claimant's high functioning activities of daily living." (R. at 21). The State agency psychologist consultants opined that Plaintiff is "capable of simple, repetitive and some multi-step tasks in a setting without demands for fast pace, occasional changes in the work setting, and occasional interaction with others." (*Id.*). The ALJ found the psychologist's opinion well supported by Dr. Sharma's examinations and the objective medical evidence on record. (*Id.*).

The ALJ gave no weight to the opinions of Dr. Sayegh. (R. at 21). The ALJ explained that Dr. Sayegh's opinion with respect to Plaintiff's physical functioning was contradicted by the objective medical evidence of the MRI's, by the physical examinations of neurological surgeon Dr. Ogden, and by Plaintiff's activities of daily living. (R. at 22). Similarly, the ALJ found Dr. Sayegh's opinion regarding Plaintiff's mental functioning was outside his area of expertise and contradicted by treatment notes from Plaintiff's own psychiatrist, Dr. Sharma, and her functioning activities of daily living. (*Id.*). Therefore, the ALJ held that Plaintiff was capable of performing jobs identified by the vocational expert and that those jobs existed in significant numbers in the national economy. *Id*. In sum, the ALJ concluded that Plaintiff was not disabled and not entitled to benefits. (*Id.*).

### C. The Magistrate Judge's Decision

In her Statement of Specific Errors, Plaintiff argued that the ALJ's decision should be reversed because: (1) the ALJ erroneously rejected the treating source opinion of Dr. Sayegh; and (2) the ALJ should have adopted the prior ALJ's finding that Plaintiff's borderline intellectual functioning was a severe impairment. (Doc. 24 at 2-4). The Magistrate Judge reviewed the record and determined that the ALJ's decision not to give Dr. Sayegh's opinion weight was substantially supported by the evidence in the record and did not merit a reversal. (Doc. 23 at 10). Similarly, on the issue of borderline intellectual functioning, the Magistrate Judge found that the ALJ's failure to follow the findings of the prior ALJ, who determined that borderline intellectual functioning was a severe impairment, was not in error. (Doc. 23 at 11-12). Accordingly, the Magistrate Judge recommended that Plaintiff's Statement of Errors be overruled and that judgment be entered in favor of the Commissioner. (Doc. 23 at 12).

## II. PROCEDURAL BACKGROUND

Plaintiff filed her Statement of Specific Errors on November 20, 2014. (Doc. 14). The Magistrate Judge issued a Report and Recommendation on July 7, 2015, (Doc. 23), and Plaintiff filed her Objections to the Magistrate's Report and Recommendation on July 21, 2015. (Doc. 24). The Commissioner filed no response.

## III. STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1), this Court, upon objection to a Magistrate Judge's Report and Recommendation, is required to make a *de novo* review of those recommendations to which objection is made. *See also* Fed. R. Civ. P. 72(b). This *de novo* review, in turn, requires the Court to re-examine all the relevant evidence, previously reviewed by the Magistrate Judge, to determine whether the findings of the Commissioner are supported by "substantial evidence." *Lashley v. Secretary of Health and Human Services,* 708 F.2d 1048, 1053 (6th Cir. 1983); *Gibson v. Secretary of Health, Education and Welfare,* 678 F.2d 653, 654 (6th Cir. 1982). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The Court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)). The substantial evidence standard is met if a "reasonable mind might accept the relevant evidence as adequate to support a conclusion [and] . . . presupposes that there is a zone of choice within which the decision-makers can go either way, without inference by the courts." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (internal citation omitted).

The findings of the Commissioner and proceedings on a claimant's application for social security disability benefits are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter, Commissioner of Social Security*, 246 F.3d 762 (6th Cir. 2001). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

Additionally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). "An ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013), *reh'g denied* (May 2, 2013).

## IV. ANALYSIS

Plaintiff challenges the Magistrate Judge's Recommendation on two grounds, contending that: (1) the ALJ failed to provide good reason for rejecting the opinions of Dr. Sayegh's, a treating source; and, (2) the ALJ's failure to incorporate the severe impairment of borderline intellectual functioning was in error. Plaintiff's objections are addressed in turn.

9

### A. Weight Given to Dr. Sayegh's Opinions

Plaintiff first asserts that the ALJ failed to provide good reason for affording no weight to the opinions of her treating physician, Dr. Sayegh, regarding her physical and mental capabilities. This Court disagrees, and finds that that the ALJ provided adequate reasons for discounting Dr. Sayegh's opinion.

#### 1. Standard for Giving Weight to Treating Physicians' Opinions

In determining whether an individual is disabled under the Social Security Act, the Commissioner considers medical opinions presented by the applicant's treating and examining physicians, as well as the opinions of state-sanctioned physicians and medical experts. 20 C.F.R. § 404.1527 (2015). A treating physician is a "[a patient's] own physician, psychologist, or other acceptable medical source who provides [the patient], or has provided [the patient], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the patient]." 20 C.F.R. § 404.1502.

Generally, the opinion of a treating physician is given more weight than a government-employed physician because a treating physician typically has better knowledge of the patient's history and impairments. *See* 20 C.F.R. §404.1527(c)(1)-(2); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 854-55 (6th Cir. 1986). Though typically given more weight, the opinion of a treating physician is accorded controlling weight only when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *See* 20 C.F.R. § 404.1527(c)(2); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). The Commissioner is not bound by the treating physician's opinion if it is a mere conclusory statement or if it is not based on sufficient

medical data. *See*, *e.g.*, 20 C.F.R. § 404.1529; *Duncan*, 801 F.2d at 845-55; *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

When the opinion of the treating physician is not given controlling weight, factors such as the length of the treatment relationship, nature and extent of the treatment relationship, and the supportability of the physician's opinion will be considered in determining how much weight to afford the opinion. 20 C.F.R. § 404.1527(c)(2). However, the ALJ need not address every piece of evidence or explicitly walk through the six factors set out in 20 C.F.R. § 404.1527(c). *Prince v. Astrue*, No. 2:10-cv-00008, 2011 WL 1124989, at *8-9 (S.D. Ohio Jan. 11, 2011) *report and recommendation adopted*, No. 2:10-CV-00008, 2011 WL 1124986 (S.D. Ohio Mar. 25, 2011) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)). Rather, if a treating physician's opinion is not accorded controlling weight, the administrative law judge must provide "good reasons" for not doing so. 20 C.F.R. § 404.1527(c)(2), and the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers,* 486 F.3d at 242. Adequate explanations exist where the ALJ indicates the weight given to each treating source's medical opinion, gives a clear explanation as to why that weight is given, and explains why he adopts the other medical opinions of record. *See, e.g.*, *Prince*, 2011 WL 1124989, at *6-9; *Duncan*, 801 F.2d at 854-55. Where an ALJ simply discounts a treating physician's opinion for lack of objectivity and adopts government medical opinions based on objectivity, however, this type of bare assertion does not constitute "good reason." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

"The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544-45 (6th Cir. 2004) (Quoting *Snell v. Apfel*, 177 F.3d 128 (2d. Cir. 1999)). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

Finally, *Wilson* instructs that a harmless-error analysis applies to the good-reasons requirement:

> [W]here the ALJ fails to give good reasons on the record for according less than controlling weight to treating sources, we reverse and remand unless the error is a harmless *de minimis* procedural violation. *See Wilson,* 378 F.3d at 547. Such harmless error may include the instance where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it," or where the Commissioner "has met the goal of ... the procedural safeguard of reasons." *Wilson,* 378 F.3d at 547. However, the ALJ's failure to follow the Agency's procedural rule does not qualify as harmless error where we cannot engage in "meaningful review" of the ALJ's decision. *Id.* at 544.

*Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009).

### 2. Physical Limitations

In this case, Plaintiff insists that the ALJ and Magistrate Judge erred by not providing controlling weight to her treating doctor's opinions. This Court agrees with the Magistrate Judge that although Dr. Sayegh had a history of treating Plaintiff, the ALJ's decision to afford more weight to the State agency medical consultants and state agency psychological consultants was both supported by substantial evidence and backed by good reasons.

The ALJ indicated that Dr. Sayegh's opinion with respect to Plaintiff's physical functioning was given no weight because it was contradicted by record evidence, the first of the

two prongs of the test used to determine whether a treating physician's opinions should be granted controlling weight. Specifically, the ALJ determined that Dr. Sayegh's opinion lacked credibility because it was heavily contradicted by medical evidence in the record. *Id.* For example, Dr. Sayegh limited Plaintiff's lifting to less than ten pounds despite Plaintiff's own admission that she regularly lifts much more than that. (R. at 21). In addition, the ALJ found Dr. Sayegh's opinion regarding Plaintiff's physical limitations to be contradicted by mild MRI findings, a generally normal physical examination by the neurological surgeon Dr. Ogden, and by Plaintiff's performing activities of daily living such as caring for her children, cleaning, and doing laundry, as well as some part-time work activity. (R. at 21-22).

Justifications of the kind given by the ALJ routinely satisfy the "good reasons" requirement. *See Francis v. Comm'r SSA*, 414 Fed. App'x. 802, 805 (6th Cir. 2011) ("ALJ acknowledged Dr. Wakham's role as Francis's 'treating family osteopath.' In assigning no weight to his opinion, the ALJ cited the opinion's inconsistency with the objective medical evidence, Francis's conservative treatment and daily activities, and the assessments of Francis's other physicians. Procedurally, the regulations require no more."). In sum, a review of the Dr. Sayegh's own 2012 treatment notes showing conservative treatment and mild findings, as well as large differences between his opinions and the medical findings of Dr. Ogden and both state agency consultants constitute sufficient reasoning for discarding the opinions of Dr. Sayegh. *See Gaskin v. Comm'r or Soc. Sec.*, 280 Fed. App'x. 472, 475 (6th Cir. 2008) (finding that when the combination of treating sources' own notes, findings by a neurologist, and other examining physicians contradict those of the treating source, the treating source opinion is inconsistent with substantial evidence in the case record and not entitled to controlling weight).

Further, although his examining notes make up a substantial portion of the medical record, Dr. Sayegh makes no reference to his medical findings in his RFC assessments. In fact, in general, Dr. Sayegh failed to elaborate on the reasoning behind his conclusions despite the evaluation form's explicit requirement to do so. (R. at 429). Such vague support for his opinions is detrimental to Plaintiff's claim. *Price v. Comm'r SSA*, 342 Fed. App'x. 172, 176 (6th Cir. 2009). In *Price*, as in the instant case, the Court ruled that the ALJ did not err in finding (among other things) that the treating physician's opinion was not entitled to controlling weight where he "failed to provide any explanation for his responses, repeatedly declining the invitation to 'please explain' the basis of his opinions." *Id*.

Furthermore, as the ALJ noted, the cavalier nature with which the forms were checked raises concern regarding the care and accuracy of their completion. *See Rogers v. Comm'r of Soc. Sec.*, 2000 WL 799332, *6 (6th Cir. 2000) (dismissing plaintiff's contention that the ALJ had no reason not to credit the reports of the treating physicians, stating that "…the ALJ had ample reason not to credit their reports. Both reports consist simply of forms in which spaces are filled out and boxes are checked off. Neither explains how the authors arrived at their diagnoses.")

When the Commissioner's decision is supported by substantial evidence in the record, it must be affirmed, even if Plaintiff's position is also supported by substantial evidence. *Smith v.Comm'r Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007).

### 3. Mental Limitations

The ALJ also gave no weight to Dr. Sayegh's opinion concerning Plaintiff's mental restrictions. This Court finds that the ALJ provided good reasons for both not granting controlling weight to these opinions, and ultimately granting them no weight. First, the ALJ

supported his decision with evidence from Plaintiff's aforementioned high functioning activities of daily living which contradicted the severity of mental health symptoms described by Dr. Sayegh. This is supported by substantial evidence in the record, including: Plaintiff working job ten to twenty hours per week, cessation of physical treatments, caring for her children, performing ordinary household duties, and ceasing to see mental health counselors. (R. at 34-53).

Second, he found that Dr. Sayegh opined on matters outside of his area of expertise. Lastly, he found Dr. Sayegh's findings that Plaintiff had mental functioning restrictions were contradicted by treatment records from Plaintiff's treating psychiatrist, Dr. Sharma, which do not contain mental functional restrictions. In fact, Dr. Sharma's notes reflect Plaintiff's own confessions regarding the lack of 'any major stressors' and doing "fairly okay."

It is the ALJ's reliance on Dr. Sharma's treatment notes when evaluating Dr. Sayegh's opinions with which the Plaintiff takes particular issue. Specifically, Plaintiff argues the ALJ erroneously relied on only some portions of Dr. Sharma's opinions to discredit Dr. Seyagh's opinions, while ignoring that Dr. Sharma assigned Plaintiff a global assessment functioning ("GAF") of 50. Plaintiff contends that had the ALJ taken the GAF score into consideration, he would have had a more accurate impression of Plaintiff's mental functionality when weighing Dr. Seyagh's opinions.

While the ALJ explicitly mentions a reliance on Dr. Sharma's notes as a reason for not giving Dr. Sayegh's opinion controlling weight, nothing in the record indicates that the ALJ did not view Dr. Sharma's notes in their entirety. Furthermore, a GAF score of "50-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning." *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. App'x. 462, 463 (6th Cir. 2006). The ALJ's MRFC finding suggesting a limitation on Plaintiff's interactions with co-workers, supervisors, and the

public reflects the concerns indicated by the GAF score. Therefore, there is no reason to believe that the ALJ did not take Plaintiff's GAF score as assigned by Dr. Sharma into consideration.

The totality of contradictions led the ALJ to conclude that Dr. Sayegh relied heavily on Plaintiff's subjective allegations instead of objective medical evidence, and as a result his opinion was entitled to no weight. (R. at 21-22). In light of this Court's analysis of the entire record, the ALJ was justified in his findings. This Court possesses a clear understanding of why the ALJ rejected Dr. Sayegh's opinion. The ALJ's justifications are more than bare assertions or summary rejections, and fully satisfy the "good reasons" requirements for disregarding a treating source opinion.

Given the conflicting evidence, and in light of this Court's analysis of the entire record, the ALJ was justified in his finding. Although this Court, as a matter of first impression, might not agree, it cannot hold that the ALJ's finding is not supported by substantial evidence.

### B.  Incorporating Prior Borderline Intellectual Functioning

Plaintiff also asserts that the ALJ committed reversible error when he failed to incorporate the finding of a prior ALJ who determined that Plaintiff's borderline intellectual functioning was a severe impairment. This Court disagrees.

Plaintiff's second assertion concerns the common law concept of *res judicata*, which states that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Drummond v. Comm'r. of Soc. Sec.*, 126 F.3d 837, 840 (6th Cir. 1997) (quoting *Allen v. McCurry*, 449 U.S 90 (1980)). *Res judicata* applies in the administrative law context when there has been a trial-type hearing, such as a hearing before an ALJ. *Id.* at 841. Consequently, the findings of an ALJ concerning a claimant's status under the Social Security Act becomes binding on a subsequent ALJ unless

16

evidence shows an improvement in a claimant's condition. *Id*. at 842. The *Drummond* decision was subsequently codified in Acquiescence Rule 98-4(6). Plaintiff insists that the current ALJ committed reversible error by failing to conform to Rule 98-4(6) which states in part:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period *unless there is new and material evidence relating to such a finding* or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding. (emphasis added).

From the outset, the ALJ acknowledges in his decision that AR 98-4(6) applies in this case. (R. at 16). Furthermore, in his preliminary justifications for not adopting prior findings concerning the Plaintiff's Mental Residual Functional Capacity ("MRFC"), the ALJ specifically mentions both a reliance on new and material evidence, and an improvement in Plaintiff's mental functioning. *Id*. Specifically, the ALJ states:

> As to the claimant's mental impairments, her mental functions has improved as evidenced by psychiatric treatment notes from Dr. Sharma, the claimant's treating psychiatrist (Exhibits B6F & B9F). Additionally, there is no evidence other than the claimant's unsupported testimony that she has borderline intellectual functioning. Regardless, the mental limitations in the residual functional capacity finding limit the claimant to simple, routine, and repetitive tasks, but the social functioning limitations are less restrictive than the prior Administrative Law Judge's finding.

(R. 11).

To narrow the issue, this Court confirms the Magistrate Judges' observation that the only difference between the Plaintiff's MRFC as determined by the prior ALJ, and the Plaintiff's MRFC as determined by the present ALJ is that the prior ALJ found that Plaintiff could not interact with the general public, whereas the current ALJ found she could occasionally do so. As the Magistrate Judge points out, such a limitation is not clearly correlated with borderline intellectual functioning. Thus, this Court agrees with the Magistrate Judge's analysis that since

the Plaintiff cannot identify any specific limitation that was wrongly omitted from the Plaintiff's MRFC due to the current ALJ's determination that Plaintiff's borderline intellectual functioning is not severe, the current ALJ has not run afoul of any *res judicata* requirements.

Even assuming that the failure to include borderline intellectual functioning as a severe impairment caused the one variation in the current MRFC determination—that the Plaintiff currently can occasionally interact with the general public, whereas she could not before—the ALJ provides sufficient reasons under AR 98-4(6) for why he is not bound by *res judicata* to the former opinion. Turning to Dr. Sharma's notes, the ALJ's determination that Plaintiff's intellectual functioning has improved is well supported. First, in addition to the information available to the prior ALJ, the current ALJ had available to him monthly visitation information from Dr. Sharma from October 2011 until June 2012. Second, Plaintiff's medical prescriptions remained relatively stable during this period, and Dr. Sharma's observations of Plaintiff as well as Plaintiff's own statements led the ALJ to conclude that there was improvement in Plaintiff's mental functioning. For example, Dr. Sharma noted that Plaintiff's judgment and insight were both improving and she was behaving appropriately towards her children (R. at 431). Finally, Plaintiff herself reported doing fairly well on numerous occasions. (R. at 434). Thus, the ALJ's determination that Plaintiff made improvements in her mental functioning is reflected in his slightly more liberal MRFC.

Therefore, the current ALJ did not err in refusing to adopt the findings of the prior ALJ who determined that Plaintiff's borderline intellectual functioning was a severe impairment. ALJ Wang was presented with new and material evidence, which indicated an improvement in Plaintiff's mental functioning and, under law, he was not required to adopt the findings of the prior ALJ.

## V. CONCLUSION

For the reasons listed here and in the Magistrate Judge's Report and Recommendation, Plaintiff's Objections are hereby **OVERRULED.** The Court **AFFIRMS AND ADOPTS** the Magistrate Judge's **Report and Recommendation**. The case is hereby **DISMISSED.**

**IT IS SO ORDERED**.

/s/ Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: September 30, 2015**